Allen Murray Myers, J.
This is an action to recover $1,440 (reduced to $1,140 by plaintiff in open court), the amount of allegedly lost travelers checks which were sold and issued by the defendant (hereinafter referred to as Amex) to plaintiff’s client, one David Joseph, and assigned to plaintiff as part of an attorney’s fee.
The experience of David Joseph in seeking remuneration for the travelers checks he claimed were lost or stolen is in vivid contrast to the much heralded ease with which this can be aceom *471 plished by Amex’ fictional characters on their radio and television commercials whose money is cheerfully refunded when thaVc txavAfixs daaoks hw lost.
David Joseph must have considered himself fortunate when he discovered that his loss was of travelers checks and not cash. However, his ebullience was transformed to consternation and despair when on July 15, 1969, upon making claim for a refund he was refused. He was confronted with a form entitled “Affidavit for Refund ” containing certain representations and about 20 questions, among which were requests for the serial numbers, face amounts and place of purchase of each lost check, information which he could not then furnish. He did fill out the affidavit form in all other respects and made the following declaration: “21. I hereby authorize the American Express Company to stop payment on these Travelers Cheques. Said Travelers Cheques bear my genuine signature only in the upper left hand corner, and if any of them are presented for payment with my name signed thereto, in any other place, on the front or back of any said Travelers Cheques I do solemnly swear that such latter signature is a forgery. I have not received any value whatsoever on account of the Travelers Cheques upon which claim is made herein and did not negotiate them, or transfer them to any person for value. 22. With respect to any refunds made to me for said Cheque (s), I agree to reimburse American Express Company for the amount of any said Cheque(s) countersigned by me or negotiated, or transferred by me on which said company makes payment.5 ’
When he signed and swore to this document he was advanced only $200 on account of his claim of $1,440. He returned the following day to continue his quest for the return of the balance of his money and was still refused. Just what transpired is unclear but apparently, out of sheer frustration he went berserk, ripped his affidavit to shreds and attacked two Amex employees before he was arrested and charged with assault and attempting to defraud Amex.
Undaunted, but this time staying away from the Amex office, he continued his quest for a refund by mailing another “ Affidavit of .Refund”, duly sworn to the 17th day of July, 1969. Although he included all the material information requested including the representations and declarations made in the previous affidavit, Amex still refused to return the balance of his money. Instead, it pursued the criminal action against him. He was tried, acquitted on the fraud charge but convicted of assault and held for sentencing in $1,000 bail which was deposited in cash. He incurred substantial legal fees and as a result *472 he was constrained to assign his entire claim against Amex to the plaintiff in this action, the lawyer who defended him in the Criminal Court. Then the harassed protagonist of this tragicomedy disappeared, forfeiting his $1,000 bail money and leaving his attorney, as assignee of his claim, to pursue Amex in an action to recover the refund on the lost travelers checks, pursuant to which this motion for summary judgment is made.
Defendant’s answer interposes a general denial and a counterclaim for a return of the $200 given to plaintiff’s assignor in reliance upon the latter’s alleged misrepresentation. The affidavits submitted in opposition to this motion raise only one issue and that is ‘ ‘ whether or not the assigned American Express Travelers Cheques purchased by Joseph were in fact lost by Joseph ”.
In seeking summary judgment, plaintiff has submitted sufficient evidentiary facts to meet his burden. There is before the court a Xerox copy of his assignor’s affidavit, the original of which is in defendant’s possession. Defendant, in its examination before trial, testified that the checks in issue were purchased by Joseph and that these checks (December, 1966 — 1 x $500; February, 1969 — 4 x $100; April, 1969 — 5 x $50; 7 x $20, 5 x $10) were not yet presented for payment. In addition, plaintiff has offered to post an indemnification bond, for at least twice the claimed loss pursuant to section 3-804 of the Uniform Commercial Code to cover costs and expenses as well as any further claims on the checks.
Defendant, in opposing this motion, must come forward with evidentiary facts to show that there are triable issues (Di Sabato v. Soffes, 9 A D 2d 297). It has failed to do so. The claim that Joseph’s affidavit is hearsay because it was not made in this proceeding is frivolous. It is a sworn affidavit and is sufficient to sustain the allegation that the checks were lost.
The fact that two $50 checks assigned to plaintiff and included in the original $1,440 were negotiated does not raise a substantial issue as to whether the remaining $1,340 in unpaid checks were in fact lost.
The defendant has had the use of Joseph’s money interest free since 1966 when the first check was purchased and since 1969 when the rest were purchased together with the 1% service charge.
Defendant in its brief claims that it makes refund of lost checks pursuant to its contract unless the £ ‘ information submitted by the claimant is inconsistent with a bona fide claim ” in which case payment is held up pending investigation.
*473 Joseph’s claim was made more than a year ago and defendant has had ample time to investigate. Yet it has failed to submit any evidence to sustain its claim that the checks were not lost. Defendant cannot be permitted to keep this money forever.
The point .of the defense interposed herein is that if the checks were in fact not lost, they may eventually be presented for payment by a bona fide purchaser for value. Since the plaintiff has offered to post a bond defendant is completely protected from any loss which might arise from such an eventuality.
The cases which hold that where the facts as to a loss are peculiarly within the knowledge of plaintiff, summary judgment should not be granted are distinguishable and inapplicable. In none of those cases was the factual pattern similar to the case at bar.
Since there are no triable issues, plaintiff’s motion for summary judgment is granted in the sum of $1,140 upon condition that plaintiff, as he has offered, post a surety company bond, approved by the court on notice in the sum of no less than $2,280 indemnifying the defendant against loss, including costs and expenses by reason of further claims on the American Express Company Travelers Cheques listed in the assignment from David Joseph to Raymond Rubin dated the 7th day of November, 1969.
The counterclaim for the return of the $200 is dismissed, defendant having been credited with that amount as a setoff in calculating the amount of the judgment.
Defendant’s cross motion is granted to the extent hereinabove indicated.